IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

T.E. "BUDDY" MONDAY

       **Plaintiff,**

  **v.**

GROUP BENEFITS PLAN FOR
EMPLOYEES OF THE MARTIN
BROWER COMPANY; THE
MARTIN BROWER COMPANY
EMPLOYEE BENEFITS &
RETIREMENT PLANS
COMMITTEE; HUB ONE
LOGISTICS, LTD.; THE MARTIN-
BROWER COMPANY; and THE
STANDARD INSURANCE
COMPANY

       **Defendants.**

          **1:06-cv-1979-WSD**

## OPINION AND ORDER

This matter is before the Court on Defendant Standard Insurance Company's ("Standard") Motion for Summary Judgment [47], Defendants Group Benefits Plan for Employees of the Martin-Brower Company, the Martin-Brower Company Employee Benefits & Retirement Plans Committee, Hub One Logistics, Ltd., and the Martin-Brower Company's (collectively, "Martin-Brower ") Motion for Summary Judgment [49], and Plaintiff T.E. Buddy Monday's ("Monday") Motion

for Summary Judgment [51].  Also before the Court are Monday's Motion to Strike Portions of the Affidavit of Molly Brady [52], Monday's Motion to Strike Portions of the Affidavit of Barbara Lublansky [55], and Standard's Motion to Strike Plaintiff's Affidavit and Certain Exhibits to Plaintiff's Motion for Summary Judgment [61].

## I.   BACKGROUND

Todd Edward Monday ("Todd Monday") worked for Defendant Hub One Logistics, a subsidiary of Martin-Brower.  Todd Monday participated in the Group Benefits Plan for Employees of the Martin-Brower Company (the "Plan"), which included basic coverages for life and accidental death and dismemberment ("AD&D") insurance.  The Plan was administered by Martin-Brower and Standard (collectively, "Defendants"), and is an employee benefits plan under the Employment Retirement Income Security Act, 29 U.S.C. § 1001 et. seq. ("ERISA").

The Plan provided basic life and AD&D coverage to employees at no cost. Employees had the option to purchase supplemental life and AD&D insurance at their sole personal expense.  If employees elected to enroll in supplemental coverage, the premiums were deducted from their paycheck.

Todd Monday first enrolled in the Plan in 1999.  On March 3, 1999, Todd Monday executed an "enrollment form" for supplemental life and AD&D coverage (the "March 3 form").  The enrollment form contained two boxes in the top left corner, one which stated "New Hire," and another which stated "Change (Only complete sections you wish to change)."  Todd Monday marked the "Change" box.[1]  Todd Monday checked boxes indicating he wished to enroll in the supplemental life insurance policy, the supplemental dependent life insurance policy for his wife Kimberly Raye Monday ("Kimberly"), the supplemental AD&D insurance policy, the long-term disability insurance policy, and for medical, dental, vision, and pharmacy coverage for himself and Kimberly.  Todd Monday designated Kimberly as his primary beneficiary.  After Todd Monday executed the form, Martin-Brower began to deduct from his paycheck the premium amounts for the supplemental coverages.

On July 20, 2000, Todd Monday and Kimberly divorced.  On August 10, 2000, Todd Monday executed a second enrollment form ("August 10 form").  The

_____

[1] The boxes for basic life and AD&D insurance were automatically pre-checked before Todd Monday received the form.  These coverages were paid for by Todd Monday's employer.  The enrollment form stated that $10,000 of basic life and AD&D insurance are "provided at no cost to you."

August 10 form was identical to the March 3 form.  Todd Monday checked the box

stating "Change (Only complete sections you wish to change)."  He changed the

primary beneficiary of his policies from Kimberly to his father, Buddy Monday,

who is the plaintiff in the present litigation.  In the "Life Insurance" section of the

form, Todd Monday checked the box which stated, "I waive enrollment in the

supplemental life plan."

In the AD&D section of the form, boxes were available for "Individual" or

"Family" supplemental AD&D, and there was a box to "waive enrollment" in the

supplemental AD&D plan.  Todd Monday checked only the box stating "I waive

enrollment in the Supplemental Accidental Death & Dismemberment Plan."[2]

In the "Dependent Life" section of the form, Todd Monday checked the box

stating "I waive enrollment in the Dependent Life Insurance."  In the "Long Term

Disability" section of the form, Todd Monday checked the box stating "I wish to

enroll in the Long Term Disability Plan."

---

[2] As in the March 3 form, the August 10 form contained pre-checked entries
for basic life insurance and basic AD&D insurance.

The second page of the form contained boxes to be checked to enroll in or opt out of medical, vision, and dental plans.  Todd Monday "x-ed out" this entire section, and did not mark any of these boxes.

On August 31, 2000, an employee in Martin Brower's payroll department reviewed and initialed each box Todd Monday had checked.  Martin-Brower continued to deduct premium amounts for the supplemental coverages Todd Monday indicated he wanted when he completed the March 3 form.  Martin-Brower continued to deduct these premium amounts from Todd Monday's paycheck until his death in a car accident on August 29, 2001.

After Todd Monday's death from car accident injuries, Monday submitted a claim for benefits under the Plan's basic coverages.  When Monday filed his claim for benefits, Martin-Brower discovered it had inadvertently continued to deduct premiums from Todd Monday's paycheck from August 31, 2000 to August 29, 2001.  On September 14, 2001, Martin-Brower issued a refund check to Monday in the amount of $231.25, representing the premium amounts for supplemental coverage deducted from Todd Monday's paycheck during that period.[3]

---

[3] Martin-Brower employee Barbara Lublansky executed an affidavit stating that the continued withholding of premium amounts for supplemental coverage from Todd Monday's paycheck was a "clerical error."  (Lublansky Affidavit at ¶

On October 15, 2001, Standard paid benefits for Todd Monday's basic life insurance and AD&D coverage.  On January 28, 2002, Monday claimed benefits under the supplemental life and AD&D policies.

On January 29, 2002, Martin-Brower advised Standard, apparently for the first time, that it erroneously had continued to deduct premiums for supplemental coverage from Todd Monday's paycheck after August 31, 2000.  Martin-Brower also advised Standard that it had refunded the premium amounts mistakenly withheld.

On April 1, 2002, Standard denied Monday's claim for benefits under the supplemental coverage policies.  Standard stated in a letter to Monday that Todd Monday had "completed a benefit enrollment form expressly waiving his right to continue coverage . . . . The fact that premium payments were erroneously continued do not entitle him to coverages he clearly intended to cancel." (Pls. Mot. for Summary Judgment, Ex. 13 at 3.)  Standard advised Monday it would send a check to Martin-Brower to reimburse it for Todd Monday's premiums, which Martin-Brower had already reimbursed to Monday.

---

8.)  Monday claims the continued deductions, and the fact that Todd Monday never objected to them, show that Todd Monday and Martin-Brower understood that he was enrolled in the supplemental coverage programs.

Monday, through counsel, appealed Standard's denial of the supplemental coverage benefits.  On September 11, 2002, Standard's "Quality Assurance Unit" issued a final rejection of the appeal.  Standard stated by letter that, in light of Todd Monday's recent divorce, "we find it reasonable that he was changing his beneficiary, as well as his coverage, as he no longer had any eligible dependents .

. . .  In summary, the documentation provided to us supports that [Todd Monday's] intent was to waive, or change, his benefit elections."  (Standard's Motion for Summary Judgment, Ex. 4 at 30-31.)

On August 23, 2006, Monday filed the present action.  Monday argues that Todd Monday intended to decline additional supplemental coverage, but did not intend to cancel his existing supplemental coverage.  Monday contends Defendants understood Todd Monday's intentions, as manifested by their continued withholding of premium amounts from his paycheck.  Monday argues that no available evidence shows that Todd Monday intended to cancel his supplemental coverage.  Specifically, Monday claims Todd Monday discussed his insurance coverage with Monday in detail after his divorce, but never mentioned canceling his supplemental coverage.  Monday also notes that Todd Monday's personal effects included a signed enrollment form, dated August 10, 2000, identical to the

August 10 form but listing an incorrect beneficiary address, and without a check next to the box for enrolling in long-term disability coverage.

## II.     STANDARD OF REVIEW

   A.     <u>Standard on Summary Judgment</u>

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  <u>Graham v. State Farm Mut. Ins. Co.</u>, 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  <u>Id.</u>

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's

favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555,

1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence,

and the drawing of inferences from the facts are the function of the jury . . . ."

Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must

not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d

at 1246.  "Where the record taken as a whole could not lead a rational trier of fact

to find for the nonmoving party, there is no genuine issue for trial."  Scott v.

Harris, 127 S.Ct 1769, 1776 (2007)

     2.    ERISA Standard

When evaluating a plan administrator's decision to deny benefits under a

plan governed by ERISA, the Court first must determine the applicable standard of

review.  The Supreme Court has established three distinct standards: (1) *de novo*,

where the plan does not grant the administrator discretion; (2) "arbitrary and

capricious," where the plan grants the administrator discretion; and (3) "heightened

arbitrary and capricious," where the plan grants the administrator discretion but the

administrator operates under a conflict of interest.  See Firestone Tire & Rubber

Co. v. Bruch, 489 U.S. 101, 115 (1989); Williams v. BellSouth Telecomms., Inc.,

373 F.3d 1132, 1134 (11th Cir. 2004).

The *de novo* review standard does not apply where a plan contains "express language 'unambiguous in its design' [giving] the Administrator discretionary authority to determine eligibility for benefits or to construe the terms of the Plan." Kirwan v. Marriott Corp., 10 F.3d 784, 789 (11th Cir. 1994). Silence in a plan does not confer discretion. Id. Here, the Plan expressly reserves to Standard discretionary authority to determine eligibility for benefits. The *de novo* standard thus does not apply.

Standard is solely financially responsible for paying benefits under the Plan. Standard agrees that it operates under an inherent conflict of interest and that the heightened arbitrary and capricious standard applies in this case.

The Court's inquiry under the heightened arbitrary and capricious standard involves several steps. First, the Court determines *de novo* whether the claim administrator's benefits-denial decision is "wrong (i.e., the court disagrees with the administrator's decision)." Williams, 373 F.3d at 1138. If the Court agrees with the administrator's denial of benefits, it should "end the inquiry and affirm the decision." Id. If the Court disagrees with the denial of benefits, it next determines "whether 'reasonable' grounds supported" the decision, and, if not, the Court should "end the inquiry and reverse the administrator's decision . . . ." Id. If the

Court finds the administrator's decision wrong, but supported by reasonable grounds, the Court last considers whether the administrator's decision was tainted by self-interest.  Id.  If the Court determines that a conflict exists and the heightened arbitrary and capricious standard applies, self-interest is presumed.  Id.  To rebut the presumption, the administrator must demonstrate a "routine practice," that the decision was "befitting the interest of other beneficiaries," or show "other plausible justifications" that the decision was not tainted by self-interest.  Id.

**III.   DISCUSSION**

    A.   Motions to Strike

Monday moves to strike paragraphs 9 and 11-13 of the affidavit of Molly Brady ("Brady Affidavit") filed in support of Standard's Motion for Summary Judgment.  Monday argues these paragraphs are "not based upon the declarant's personal knowledge.  Instead, declarant has reviewed certain documents and then offered her opinion regarding the intent or legal effect of those documents."  (Pls. Mot. to Strike Brady Affidavit at 2.)   Monday also argues that "most" of this information is outside the administrative record.

After carefully reviewing the affidavit, the Court finds that paragraph 12 of the Brady affidavit states an inappropriate legal conclusion.  The Court determines

that paragraph 12 should be stricken.  The other challenged paragraphs contain facts within the personal knowledge of the affiant.

Monday also moves to strike paragraphs 6-8 and 10 of the affidavit of Barbara Lublansky ("Lublansky Affidavit") for lack of personal knowledge. Monday also argues that these paragraphs state inappropriate legal conclusions. After carefully reviewing the Lublansky affidavit, the Court finds that paragraphs 6, 7, and a portion of paragraph 10 state inappropriate legal conclusions. Paragraphs 6 and 7 are inappropriate in their entirety and are stricken.  The last three words ("waiving supplemental benefits") are stricken from paragraph 10.[4]

Defendant Standard moves to strike Monday's affidavit, and exhibit 7 attached to it, as introducing facts outside of the administrative record.  It is well-settled that the Court bases decisions under ERISA's reticulated standard of review on "facts known to the administrator at the time its decision was made," Lee v. Blue Cross / Blue Shield of Ala., 10 F.3d 1547, 1550 (11th Cir. 1994).  "Under heightened arbitrary and capricious review, evidence outside of the administrative record cannot be used to reverse an ERISA plan administrator's denial decision." Menard v. Hartford Life & Acc. Ins. Co., –F.3d–, 2007 WL 4462922 (11th Cir.,

---

[4]  With the phrase "waiving supplemental benefits" stricken, the remainder of paragraph 10 states facts within the personal knowledge of the affiant.

December 21, 2007).  The reason for this evidentiary restriction lies in the purpose of the arbitrary and capricious standard, which is "to determine whether there was a reasonable basis for the decision, based on the facts known to the administrator at the time the decision was made."  Jett v. Blue Cross and Blue Shield of Ala., Inc., 890 F.2d 1137, 1139 (11th Cir. 1989).

In this case, the Court must engage not only in an ERISA reasonableness analysis, but also must make an estoppel determination.  For the ERISA reasonableness analysis, Eleventh Circuit law is clear that the Court must place itself in the shoes of the administrator to evaluate the denial of benefits, and limit the evidence it considers accordingly.

The estoppel analysis, by contrast, asks whether: "(1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider has made representations to the plaintiff that constitute an informal interpretation of that ambiguity."  Jones v. American Life & Acc. Ins. Co., 370 F.3d 1065, 1069 (11th Cir. 2004).  This determination is not concerned with the reasonableness of the plan administrator's claim denial decision, but rather with whether, under principles of equity, Defendants' prior representations preclude them from denying claim benefits in a particular case, even on reasonable grounds.  The estoppel

determination requires the Court to consider factually whether the plan administrator "informally interpreted" ambiguous plan provisions. This inquiry may require the Court to consider evidence outside of the administrative record to determine whether an informal interpretation giving rise to estoppel occurred. Information outside of the administrative record, such as Monday's affidavit, can properly be considered in this analysis. The Court declines to strike Monday's affidavit and exhibit 7 thereto from the record. The Court, however, considers these documents only for the purpose of conducting its estoppel analysis.

Standard also argues that Monday's affidavit is based on inadmissible hearsay and speculation. Standard does not specify what portions of Monday's affidavit it finds objectionable. After carefully reviewing the affidavit, the Court does not find cause to strike it.

B.    Motions for Summary Judgment

The summary judgment motions filed by Monday and the Defendants present opposing arguments on the same issues. The Court will address the motions together, mindful of its obligation to "view all evidence in the light most favorable to the non-movant and resolve all reasonable doubts about the facts in

favor of the non-movant."  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. Of

Am., 894 F.2d 1555, 1558 (11th Cir. 1990).

    1. *Standing*

   Standard first argues that Monday does not have standing to bring this suit.

ERISA suits for benefits can only be brought by individuals who are "participants"

or "beneficiaries" of the Plan.  ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

ERISA defines "participant" as "any employee or former employee . . . who is or

may become eligible to receive a benefit of any type from an employee benefit

plan . . . ."  29 U.S.C. § 1002(7).  "Beneficiary" is defined as "a person designated

by a participant, or by the terms of any employee benefit plan, who is or may

become entitled to a benefit thereunder."  29 U.S.C. § 1002(8).  To be a

beneficiary, an individual need only have a "colorable claim" to benefits.  Neuma,

Inc. v. AMP, Inc., 259 F.3d 864, 878 (7th Cir. 2001).[5]  Even in cases where a

plaintiff's claim is ultimately unsuccessful, the possibility of success raised by a

colorable claim establishes standing.  Id.

---

[5] The parties did not present any Eleventh Circuit authority on the meaning
of the term "beneficiary" for standing purposes under ERISA, and the Court did
not discover any in its own research.

Although Monday was not a participant in the Plan, he is a "beneficiary." Todd Monday designated Monday to receive benefits under whatever life and AD&D coverage he had at the time of his death. If, as Monday argues, Todd Monday did not cancel supplemental life and AD&D coverage with the August 10 enrollment form, Monday is entitled to benefits. While Monday's argument may not succeed on the merits, he presents a colorable claim for benefits and has standing to proceed. Defendants' argument that Monday lacks standing because they denied his claim for benefits misstates the law and is inconsistent with common sense.

2.    *Estoppel*

Monday argues that because Martin-Brower continued to deduct premium amounts from Todd Monday's paychecks, Defendants are estopped from denying Monday's claim for benefits. The Eleventh Circuit recognizes "a very narrow common law doctrine . . . for equitable estoppel" in ERISA suits claiming benefits. Jones v. American Life & Acc. Ins. Co., 370 F.3d 1065, 1069 (11th Cir. 2004). Equitable estoppel is available where the plaintiff can show "(1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider has made representations to the plaintiff that constitute an informal interpretation of that

-16-

ambiguity." <u>Id.</u>  Representations that contradict unambiguous plan provisions do not give rise to estoppel, even if relied upon to a beneficiary's detriment.  <u>See, e.g.,</u> <u>Katz v. Comprehensive Plan of Group Ins.,</u> 197 F.3d 1084, 1090 (11th Cir. 1999).

The parties agree that no ambiguity exists in the language of the Plan or the Plan summary.  The Plan clearly delineates the circumstances under which coverage can be terminated, but does not set forth a method for voluntary termination of supplemental coverages.  The issue in this case is whether the Plan is ambiguous as it relates to the voluntary cancellation of supplemental life and AD&D insurance through the use of the enrollment forms.[6]

Monday argues the phrase "waive enrollment," as used in the enrollment form, is ambiguous.  Monday contends that Defendants' continued withholding of premiums for supplemental coverage from Todd Monday's paycheck operated as an "informal interpretation" that his elections on the August 10 form did not cancel his supplemental coverage policies, and, because of this interpretative representation, Defendants are estopped from denying coverage.

---

[6]  The enrollment form was apparently the only operative document related to participants' rights to modify or terminate Plan benefits voluntarily.  If the enrollment form was not an operative Plan document, the Plan would not provide any method for voluntary termination.

Defendants claim the enrollment form is not ambiguous, and, even if it was, that withholding premium amounts from Todd Monday's paycheck was not an "informal interpretation" giving rise to estoppel.

The Plan does not define the phrase "waive enrollment," nor does it define the terms "waive" or "enrollment" individually.  The law is well-settled that terms in ERISA policies that are not specifically defined are interpreted according to their "plain and natural" meanings.  Bedinghaus v. Modern Graphic Arts, 15 F.3d 1027, 1029-30 (11th Cir. 1994).  Plain and natural meanings "comport with the interpretations given by the average person."  Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1084 (1st Cir. 1990).  "An insurance contract is ambiguous if it is susceptible to two or more reasonable interpretations that can be fairly made."  Dahl-Eimers v. Mut. of Omaha Life Ins. Co., 986 F.2d 1379, 1381 (11th Cir. 1993) (citations omitted).  The Court, following well-accepted canons of contractual interpretation, must read the Plan documents as a consistent whole.  Westport Ins. Corp. v. Tuskegee Newspapers, Inc., 402 F.3d 1161, 1164 (11th Cir. 2005).

"Waive" is commonly defined as "to refrain from claiming or insisting on; give up; forgo."  Webster's Encyclopedic Unabridged Dictionary, 2137 (2001). "Enrollment" is defined as "the act or process of being enrolled," which is defined

-18-

as "to . . . place upon a list; register." <u>Id.</u> at 647.  Monday interprets "waive

enrollment" to mean refusing new coverage while maintaining existing coverage

(e.g., to "refrain" from "registering," because the participant has already

registered).  Standard interprets the phrase to mean terminating coverage (e.g. to

"forgo" being "placed upon the list" of supplemental coverage, even if already on

the list).

 While both interpretations might, in a vacuum, be reasonable, the

enrollment form, read as a consistent whole, permits only one construction.  The

first box presented to the participant asks whether the participant is a "New Hire"

or wishes to "Change" coverage.  The "Change" box, which Todd Monday

checked, instructs, "Only complete sections you wish to change."  Todd Monday's

first election on the enrollment form provided an express instruction telling him

not to fill out any boxes for coverages he did not wish to change.  Because

checking the "waive enrollment" box must be construed consistently with the

express instruction that doing so will change the participant's coverage, it cannot

reasonably be interpreted to mean maintaining the same coverage.  In light of that

instruction, a participant that checks the "waive enrollment" box elects to *change*

*his coverage* by "waiving enrollment."  A participant cannot, as Monday claims,

seek to keep his coverage the same by checking a box.

Taking as true that Todd Monday intended primarily to remove Kimberly as

a beneficiary, his elections in the August 10 form are consistent with its plain,

unambiguous meaning.  It is undisputed that Todd Monday intended to cancel his

"Dependent Life" coverage.  He did so by checking the box stating "I **waive**

**enrollment** (emphasis supplied) in the Dependent Life Insurance."  Conversely,

Todd Monday wanted to retain the long-term disability coverage for which he was

already enrolled.  He did so by checking the "I wish **to enroll** (emphasis supplied)

in the Long Term Disability Plan" box, showing that he understood that checking

the "waive" box would change or terminate his coverage.[7]  Todd Monday checked

no box at all for his health care coverage, which he intended to keep.  No

ambiguity  exists in the document, and estoppel is not appropriate.

_____

[7]  The "alternative form" presented by Monday as Exhibit 7 to his affidavit
supports the lack of ambiguity in the document.  There are two material differences
between the form found in Todd Monday's personal effects and the one actually
submitted to Defendants.  First, the alternative form lists an incorrect address for
Monday.  Second, the alternative form does not have a check in the box stating "I
wish to enroll in Long Term Disability Coverage."  The alternative form shows
that Todd Monday intended to keep his long term disability coverage. This
evidence is outside of the administrative record, but, to the extent it is relevant, it
undermines Monday's speculative argument.

Even if the enrollment form is ambiguous–which the Court concludes it is not–Monday has not identified any "informal interpretation" of the document upon which Todd Monday relied when checking the "waive enrollment" boxes. Monday argues that Defendants "interpreted" the enrollment form by continuing to withhold premiums from Todd Monday's paycheck.  Assuming *arguendo* that paycheck stubs are "informal interpretations" of the enrollment form's meaning, the stubs were not provided to Todd Monday until after he filled out the August 10 form.  The paycheck stubs thus could not have "interpreted" the enrollment form for him.

### 3.     *Coverage Cancellation*

Standard's decision to deny coverage, reviewed under the heightened arbitrary and capricious standard, must be upheld.  Monday and Defendants offer two competing definitions of the phrase "waive enrollment."  Monday argues that "waive enrollment" means "keep existing coverage and decline additional coverage," while Defendants argue that the phrase means "terminate existing coverage."  As noted above, Monday's construction of the phrase is not reasonable when the enrollment form is read as a consistent whole.

Martin-Brower's continued deduction of premiums from Todd Monday's paychecks, while inappropriate, does not create ambiguity in the Plan and does not entitle Todd Monday to coverage that he unambiguously cancelled.  The Plan provides:

> Clerical error by the Policyowner will not:
> 1.    Cause a person to become insured
> 2.    Invalidate insurance otherwise validly in force.
> 3.    Continue insurance otherwise validly terminated.

(Plan at 24.)

Monday argues that Martin-Brower continued to deduct premiums because it carefully reviewed the August 10 form and did not interpret it as a termination of the supplemental coverages.  There is no evidence in the record to support this speculation.  The Lublansky Affidavit unequivocally states that the continued withholding was the result of clerical error.  By the Plan's own terms, clerical error cannot "continue insurance coverage otherwise validly terminated."  The Court, examining Defendants' denial of benefits *de novo*, finds the decision correct.  The Court must therefore end the inquiry, and affirm Standard's denial of benefits

Monday last argues that documents produced by Martin-Brower during the summary judgment briefing process create issues of fact concerning Defendants'

exercise of discretion.  The first late-produced document[8] submitted by Monday is another copy of August 10 form.  Monday claims this form "differs in certain material respects from the form provided to plaintiff [initially] . . . . The differences on this form suggest that a representative of [Martin-Brower] completed certain portions of the form, probably after decedent signed the form and submitted it . . . ." (Pls. Reply at 4-5.)  Monday does not specify what particular "material differences" exist between this form and the enrollment form acknowledged to have been submitted to Martin-Brower by Todd Monday and produced earlier in this litigation  (Id. at 5.)  After carefully reviewing the newly-provided form, the Court cannot find any material difference between it and the August 10 form.[9]

Monday does not explain or offer evidence to support his serious allegation that Martin-Brower employees altered Todd Monday's form after he submitted it.

---

[8] It is unclear to the Court whether Monday has reproduced the document discovered in Todd Monday's personal effects, or whether this additional enrollment form was in Defendants' sole possession and later produced to Todd Monday.  Monday's reply brief suggests that this is a third version of the enrollment form that was in Defendants' possession.  Regardless of its origin, the existence of this form does not alter the Court's conclusion.

[9] The only notable difference is that this "new" form does not have a check next to the box for enrollment in long-term disability.

Monday's speculative accusations do not create an issue of material fact in the absence of supporting evidence.

Monday also submits a handwritten note from Todd Monday to a woman named "Laurie," dated August 10, 2000, which states:

> Here's the documents we discussed last time you were
> down.  Please make the changes and forward to
> whomever will control my retirement disbursement.
> Inside you should find forms / copy of divorce settlement
> and final decree. Thanks for your help.  Todd.

(Pls. SJ Reply, Ex. A.)

Below this narrative is a comment by an unknown person, in handwriting different than that of the body of the note, stating, "remove wife from benefits, Todd Monday."  (Id.)

Monday claims this note shows that Standard's denial of benefits was wrong and unreasonable.  The Court disagrees.  This note at most shows that Todd Monday was concerned with changing his insurance coverages to reflect his recent divorce.  The note does not say that the only change he intended was to remove his ex-wife as beneficiary.  It implies only that the most important change he intended was to remove his ex-wife as a beneficiary.  The other changes made to Todd Monday's policy, such as waiving his dependent life, supplemental life, and supplemental AD&D insurance, but retaining his long term disability insurance,

-24-

are subsidiary to removing his ex-wife as a beneficiary, and are consistent with the intent expressed in the note.  The note does not affect the Court's conclusion that Standard's decision was correct under a *de novo* standard.

## III.   CONCLUSION

**IT IS HEREBY ORDERED** that Monday's Motion to Strike the Brady Affidavit [52] and Motion to Strike the Lublansky Affidavit [55] are **GRANTED IN PART** and **DENIED IN PART** in accordance with the terms of this Order. Standard's Motion to Strike Plaintiff's Affidavit and Exhibit [61] is **DENIED**.

**IT IS FURTHER ORDERED** Standard's Motion for Summary Judgment [47] and Martin-Brower's Motion for Summary Judgment [49] are **GRANTED**.

**IT IS FURTHER ORDERED** that Monday's Motion for Summary Judgment [51] is **DENIED**.

**SO ORDERED** this 28th day of December, 2007.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE